F I L E D
United States Court of Appeals
Tenth Circuit

MAY 3 2000

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

MARK WAYNE CRUZ,

        Plaintiff-Appellant,

v.

JAMES WEBB, individually as SWAT
Officer, Utah State Prison; MIKE
IPSEN, individually as SWAT Officer,
Utah State Prison; CHET BATEMAN,
SWAT Officer, Utah State Prison,

        Defendants-Appellees.

No. 99-4107
(D.C. No. 98-CV-27-J)
(D. Utah)

ORDER AND JUDGMENT

Before **TACHA** , **ANDERSON** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

Plaintiff filed this action under 42 U.S.C. § 1983, alleging that prison

officials' use of excessive force against him violated his Eighth Amendment right

to be free from cruel and unusual punishment.  The district court granted

defendants' motion for summary judgment, and plaintiff appeals. We review the grant of summary judgment *de novo*, and we will affirm if there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). "We view the evidence and draw any inference in a light most favorable to [plaintiff], but [he] must identify sufficient evidence which would require submission of the case to a jury." *Id.* Guided by these standards, we affirm.

The only evidence submitted on the summary judgment record was the attachments to defendants' memorandum in support of their summary judgment motion, which consisted of excerpts from depositions, affidavits, and prison records. The plaintiff submitted no additional evidence in his response to the motion. He did, however, make factual allegations citing to portions of depositions not before the district court. Similarly, plaintiff's brief on appeal contains references to evidence that was not before the district court. Plaintiff attempts to incorporate this evidence into the record by including it in his appellate appendix. In deciding this appeal, we have considered only the record evidence that was before the district court. Plaintiff may not rely on evidence that is not in the record in arguing that there are genuine issues of material facts precluding summary judgment. *See Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1475 (10th Cir. 1993) (portions of depositions not filed with or presented to district

court could not be considered by district court on summary judgment or by appeals court on review).

Plaintiff claims that prison officers used excessive force on him in violation of his Eighth Amendment rights. The incident giving rise to the claims occurred when plaintiff was on "dry cell" status, which is invoked when a prisoner is suspected of smuggling contraband into the prison in a package inserted in the prisoner's rectum. The prisoner is held in a cell without a toilet until he is ready to defecate. When the prisoner indicates he is ready, he is allowed to defecate in a bucket so that the officers can search for contraband. The prisoner is denied access to a toilet to avoid the possibility that he might flush the contraband down the toilet. After plaintiff finished defecating in the bucket, he approached the toilet, put something in it, and flushed. At that point, the evidence shows there was a flurry of activity resulting from plaintiff's breach of discipline and the officers' attempts to restrain him and restore discipline.

The record shows after plaintiff flushed the toilet, an officer ordered him to get against the wall. Plaintiff hesitated and questioned the order, and the officer sprayed Lysol in his direction. One of the officers took plaintiff to the floor, placed his knee on plaintiff's back, and restrained him there until plaintiff was handcuffed. In attempting to get plaintiff up off the ground, the officers pushed plaintiff into a wall. Plaintiff's head struck the wall, and he was momentarily

knocked unconscious.  As a result of the scuffle, plaintiff complained of breathing difficulty, blurred vision, and pain in his head and all over his body.

A little over an hour later, plaintiff was examined by a nurse.  Plaintiff complained to the nurse of chest pain, headache, and dizziness.  He stated to the nurse that he hit his head, was knocked unconscious, and was experiencing chest pain resulting from an officer's knee in his back.  The nurse reported no swelling or discoloration on plaintiff's head, back or chest.  She stated in an affidavit that plaintiff did not complain of any problems with his eyes and made no mention of being sprayed with Lysol.  Further, she did not observe any sign of trauma or redness in plaintiff's eyes, nor did she smell Lysol.  She gave plaintiff oxygen because he complained he was having trouble breathing.

Where, as here, prison officials use force to restore discipline after a disturbance, the proper inquiry to determine if an Eighth Amendment violation occurred is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting  *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). [1]  This standard accounts for the fact that decisions to use force in such

---

[1]   The dissent suggests that a jury could find that, although plaintiff provoked the force used to restrain him, he did nothing to provoke the continued use of force after he was handcuffed.  In contrast to the situation presented in  *Miller v. Glanz*, 948 F.2d 1562, 1564, 1567 (10th Cir. 1991), the allegations of excessive
(continued...)

-4-

situations are "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley* 475 U.S. at 320. That reasoning is applicable here, where the rapidly developing set of events required the officers to make quick decisions to restore discipline. Confronted with plaintiff's breach of discipline, the prison officials were required to "balance the need to maintain or restore discipline through force against the risk of injury to [plaintiff]." *Hudson* 503 U.S. at 6.

Here, there is no dispute that plaintiff flushed something down the toilet while he was on dry cell status, an act in defiance of the procedure in place to detect the existence of contraband and one that prompted the officers' need to maintain order and restore discipline. The record evidence shows that the officers exerted the physical force necessary to restrain plaintiff and restore discipline. Plaintiff's testimony establishes that an officer sprayed Lysol "in [plaintiff's]

[1](...continued)
force in this case arise out of one incident comprised of a series of rapidly-developing events. *Miller* involved allegations of two incidents of excessive force, separated by time and distance. One arose from the prisoner's resistance to an officer's attempt to handcuff him, and the other arose later, after the prisoner had been locked in a holding cell. 948 F.2d at 1567. In *Miller*, the district court dismissed the prisoner's claims under Fed. R. Civ. P. 12(b)(6). We reversed and remanded, holding that the prisoner's allegations of excessive force were sufficient to state a claim. *Id.* at 1567. We stated that, on remand, in order for the *district court* to determine the correct standard to apply in further proceedings, the *district court* must make a determination as to whether the prisoner posed an emergency-type threat when the second incident of alleged excessive force occurred. *Id.*

direction" after plaintiff hesitated in backing up against the wall. Appellee's Supp. App. at 44. The evidence shows this act was neither malicious nor sadistic. *See Hudson*, 503 U.S. at 5, 7. The record also shows that, after plaintiff was restrained, the officers used the physical force they considered necessary to maintain discipline. Plaintiff has presented no evidence creating a question of fact that the officers acted "maliciously and sadistically for the very purpose of causing harm rather than in a good-faith effort to maintain or restore discipline."[2] *Mitchell v. Maynard*, 80 F.1433, 1440 (10th Cir. 1996).

---

[2] Whether plaintiff failed to rise to his feet because he was hurt or simply resisting the officers' efforts to restore discipline is not a material question of fact. The relevant inquiry is whether the officers applied force in a good faith effort to restore discipline, and plaintiff has presented no evidence to suggest they did not. There is no evidence that the officers believed that plaintiff was refusing to stand because he was hurt and that they threw him into the wall knowing he was unable to stand and intending to inflict further injury, something that could certainly be characterized as malicious and sadistic. The dissent points to plaintiff's statement that the officers made some comments about knowing what to do with him before they slung him into the wall when he did not comply with their efforts to get him to his feet, as contrary to our conclusion that there is no question of fact regarding the officers' good faith. In fact, such a statement by the officers is consistent with their perception that plaintiff was resisting their efforts to restore discipline, thus requiring further use of force.

Plaintiff has not demonstrated a genuine issue of material fact as to his excessive force claim. The record shows that defendants' conduct under the circumstances was neither malicious nor sadistic. Plaintiff's evidence does not show that the officers acted other than in a good-faith effort to restore discipline, and, consequently, they are entitled judgment as a matter of law.

AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Circuit Judge

99-4107, Cruz v. Webb

**LUCERO** , Circuit Judge, dissenting.

After careful review of the evidence presented to the district court on summary judgment, I conclude there is a genuine issue of material fact as to whether the force used by the correctional officer defendants was wanton or was implemented in good faith. I therefore respectfully dissent.

The record reflects that after the officers handcuffed Cruz, they attempted to make him stand. He testified that he would not stand because he thought he was injured: "I wouldn't give no [sic] strength to my legs" because "I didn't want to put any pressure, which in turn would put [pressure] on my back or my neck, and I knew something was wrong with me." (Appellees' Supp. App. at 45.) Although he told the officers not to move him because they "hurt [him] really bad" and repeatedly stated he "need[ed] medical attention," when he "didn't stand for them" and when the officers saw he "wasn't going to put any pressure on [his] legs, . . . they slung [him] into the wall." ( Id. at 45-46.) Cruz characterized the officers' conduct as having "rammed" him into the wall. ( Id. at 47.) An inmate who witnessed the event stated that an officer "slammed him into the wall" and that his head "bounced off the wall." ( Id. at 114.) As a result, he was knocked unconscious. ( Id. at 49, 95, 98.)

While the conclusion reached by the majority is certainly one possible interpretation of the facts, another interpretation is that the officers "rammed"

Cruz's head into the wall, while he was restrained, unable to stand on his feet, and requesting medical care. Although plaintiff may have provoked the initial force used to restrain him, a reasonable jury could conclude that, at the point the officers "rammed" his head into the wall, plaintiff had ceased "to pose a legitimate threat to the safety of the officers and other prisoners," Miller v. Glanz, 948 F.2d 1562, 1567 (10th Cir. 1991), and did nothing to provoke this continued use of force, see Green v. Branson, 108 F.3d 1296, 1301-02 (10th Cir. 1997). [1] The majority speculates that the officers acted in good faith because they "pushed Cruz into a wall" in an "attempt[] to get [him] up off the ground," (Order & Judgement at 3), yet that is but one scenario supported by the evidence. The majority's factual conclusion stands in contrast to Cruz's statement that before they "slung" him into a wall, the officers "made some comments about they [sic] know what to do with [him]." (Appellant's App. at 45, 46.) I think it best for a jury to resolve the factual dispute. Viewing the evidence in the light most favorable to Cruz as the non-moving party, as we must in reviewing a grant of summary judgment, a question remains as to whether the officers wantonly

---

[1] If a jury ultimately found that Cruz no longer posed a threat to the officers or other prisoners at the time of the incident of which he complains, then the required showing of the officers' intent would change from malicious and sadistic to deliberate indifference. See Miller, 948 F.2d at 1566-67.

inflicted an injury upon him.    See Green, 108 F.3d at 1301;   see also Miller, 948 F.2d at 1567.